UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ERIE INSURANCE PROPERTY &
CASUALTY COMPANY, INC.,

        **Plaintiff,**

                                     **Case No. 2:12-cv-1080**
                                     **JUDGE SARGUS**
   **v.**                                    **Magistrate Judge Abel**

TANIA CRAWFORD,

        **Defendant.**

### OPINION AND ORDER

This case is before the Court on Defendant's two motions to dismiss for jurisdictional reasons and Plaintiff's motion for summary judgment. For the reasons that follow, Defendant's first motion to dismiss (Doc. 6) is **DENIED**, Defendant's second motion to dismiss (Doc. 24) is **GRANTED**, and Plaintiff's motion for summary judgment (Doc. 21) is **DENIED as moot**.

### I.   POSTURE

On November 26, 2012, Plaintiff, Erie Insurance Property & Casualty Company, Inc. filed a complaint with this Court seeking a declaration that it is not liable to defend or indemnify Defendant, Tania Crawford, in respect to a state court lawsuit brought by two people whom she shot in August of 2010. (Doc. 2, Compl.). Erie alleged diverse citizenship but did not specifically allege an amount in controversy. *Id.* Crawford moved to dismiss. (Doc. 6, D. Mot. to Dis.). However, before the Court ruled on that motion, the Court granted Erie leave to amend so that Erie could add a new policy that had previously been overlooked. (Doc. 12, Pretrial Order). Erie amended, adding a new policy, and this time, specifically alleged that the amount in

controversy exceeded $75,000. (Doc. 13, Amend. Compl. at ¶ 4). Defendant answered and counterclaimed for breach of contract and breach of the duty of good faith in an amount "in excess of $25,000.00." (Doc. 15, Answer & Counterclaim at prayer for relief). Plaintiff then moved for summary judgment on the merits. (Docs. 21-22, P. Mot. for SMJ). Shortly thereafter, Defendant filed a second motion to dismiss in which it argued that the Court should, even if it has subject matter jurisdiction in this case, abstain from exercising jurisdiction. (Doc. 24, D. 2d Mot. to Dis.). All motions are fully briefed. (*See* Docs. 6, 8-9, 21-22, 24-27, 30-31).

## II.  BACKGROUND

The core facts are undisputed in this case. Crawford, shortly after midnight on August 13, 2010, fired several shots into a car near her house and hit two of the four occupants. In connection to that event, she pled guilty to several felony assault counts and counts related to the improper discharge of a firearm. (Doc. 22, Ex. D, Sent. Ent. at 1). She was sentenced to 4 years and 11 months in prison. The State of Ohio agreed not to oppose early release after 2 years had been served. *Id.* at 3.

The two persons who were shot on August 13, 2010, sued Crawford on April 8, 2011, in the Ohio Court of Common Pleas for Meigs County. (Doc. 13, Ex. A, State Ct. Compl.). They alleged that Crawford "negligently and without the right or privilege to do so, fired a firearm at the[m] . . . while they were in a motor vehicle on a public roadway." *Id.* at ¶ 1. They allege that they were hit by bullets fired by Crawford and that they have "incurred medical expenses, endured pain and suffering, mental anguish and have permanent scaring and injuries" as a consequence. *Id.* at ¶¶ 2-3. The Complaint filed in the Meigs County Court of Common Pleas seeks damages in excess of $25,000.00. *Id.* at prayer for relief.

Crawford was insured, at the time of the shooting, under two policies issued by Erie. (Doc. 22, Ex. E, Home Protector Policy; Doc. 22, Ex. F, Personal Catastrophe Policy). Both

provided coverage for some amount that Crawford might become legally obligated to pay as a result of bodily injury to another person. (Doc. 22, Ex. E, Home Protector Policy at 14; Doc. 22, Ex. F, Personal Catastrophe Policy at 4; *see also id.* at 3 (defining personal injury as including bodily injury)). Both promised a defense of any such claims at Erie's expense "even if the allegations are not true." (Doc. 22, Ex. E, Home Protector Policy at 14; Doc. 22, Ex. F, Personal Catastrophe Policy at 4). Both excluded from coverage, however, liability based on bodily injury that was "expected or intended by anyone we protect." (Doc. 22, Ex. E, Home Protector Policy at 15; Doc. 22, Ex. F, Personal Catastrophe Policy at 4). Yet, both carved out an exception to that exclusion by stating, "We do cover reasonable acts committed to protect persons [and/or] property."[1] (Doc. 22, Ex. E, Home Protector Policy at 15; Doc. 22, Ex. F, Personal Catastrophe Policy at 4).

This much, at least, is undisputed. However, the parties dispute the details of what occurred on the dark morning of Friday the 13th of August, 2010, and whether the actions Crawford took were reasonably taken in defense of property and/or self.

Erie presents, via Crawford's guilty plea and a number of police reports, a story of a random shooting; Crawford, for no evident reason, opened fire upon a car passing her house. (Doc. 22, P. Memo. in Supp. of SMJ at 1-3; *see also* Doc. 22, Ex. B, Police Rpts.; Doc. 22, Ex. D, Sent. Ent.).

Crawford presents, via her own affidavit, a tale of intended defense and semi-accidental shooting. (Doc. 27, Ex. 1, Crawford Aff.). Crawford claims that she and her husband (a retired police officer) had, for some time, been the subject of a course of threats and harassment perpetrated by three neighboring men. *Id.* at ¶¶ 8-22. The harassment began following allegations of poaching, leveled against the men by Crawford's husband. *Id.* at ¶¶ 8-9. In

---

[1] One policy uses "and" and one uses "or" but with no meaningful difference as far as this litigation is concerned.

3

addition to the poaching that touched-off the conflict, these neighbors allegedly vandalized a hayfield, committed various trespasses, attempted to make Crawford's horses sick by putting trash and other articles where they might ingest them, shot Crawford's house and boat with paintball guns, and made threatening use of vehicles – driving by and squealing tires at all hours while yelling threats and profanity. *Id.* at ¶¶ 9-20. Thus, according to Crawford, it was after a long course of threatening conduct when, on August 13, 2010, a mysterious car appeared near her house after midnight and shone a bright light in her window. *Id.* at ¶¶ 3-22, 26-27. Crawford, awakened by the light, was home alone and claims to have heard male voices loudly yelling swear words and threatening harm to her. *Id.* at ¶¶ 25, 27, 29. After several passes and other maneuvers, the car pulled on to Crawford's property at her mailbox. *Id.* at ¶¶ 33-51. From the curtilage of her home, Crawford claims to have fired what she intended to be a warning shot. *Id.* at ¶¶ 53. She swears that in her panic, and unaware of how light the trigger pull was on her husband's pistol, she accidentally fired the gun multiple times. *Id.* at ¶¶ 54-63. She claims that she never meant to hurt anyone and that she pled guilty, rather than go to trial, because her husband has lung cancer and she wanted to be home as soon as possible. *Id.* at ¶¶ 63-68.

## III.    DISCUSSION

### A. Subject Matter Jurisdiction

28 U.S.C. § 1332 grants district courts original jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the action is between "citizens of different States . . . ."

In this case, Erie has alleged an amount in controversy in excess of $75,000. (Doc. 13, Amend. Compl. at ¶ 4). Although the Amended Complaint seeks a declaratory judgment rather than traditional damages, the Sixth Circuit "has said that, '[w]here a party seeks a declaratory judgment, the amount in controversy is not necessarily the money judgment sought or recovered,

4

but rather the value of the consequences which may result from the litigation.'" *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (quoting *LoDal, Inc. v. Home Ins. Co.*, Case No.: 95-2187, 1998 U.S. App. LEXIS 12841, *6 (6th Cir. June 12, 1998)).  The declaration Erie seeks would entitle it to avoid defending or indemnifying Crawford in the civil suit pending against her in the Ohio Court of Common Pleas, Meigs County, Ohio. (Doc. 13, Amend. Compl. at prayer for relief).  Though the complaint against Crawford in the Meigs County Court only pleads an amount in controversy "exceed[ing] $25,000.00," it is easy to see that defense expenses and potential awards to two gunshot victims who, at least allegedly, have "permanent scaring and injuries" could easily exceed $75,000. (Doc. 13, Ex. A, State Ct. Compl. at ¶ 3 & prayer for relief).  Hence, the grant or denial of the declaratory judgment sought, is likely to have an impact upon the parties in excess of $75,000.

In addition, this litigation is between citizens of different states. Defendant, Crawford, is a natural person and domiciliary of the State of Ohio. (Doc. 13, Amend. Compl. at ¶ 3; Doc. 15 Answer at ¶ 3).  Plaintiff, Erie, is a corporation organized under the laws of Pennsylvania and has its principal place of business there as well. (Doc. 13, Amend. Compl. at ¶ 2).  Accordingly, Crawford is a citizen of Ohio and Erie is a citizen of Pennsylvania. 28 U.S.C. § 1332(c)(1) (2012).

Crawford, however, argues that a carve-out, set forth in § 1332(c)(1), imputes her citizenship (Ohio) to Erie and thus there is no diversity of citizenship betwixt the parties. (Doc. 6, D. Mot. to Dis. at 2).  However, the statute's language, on which Defendant relies, does not support this result.

> [A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated,

5

<u>to which action the insured is not joined as a party-defendant</u>, such insurer shall be deemed a citizen of--

(A) every State and foreign state of which the insured is a citizen . . . .

28 U.S.C. § 1332(c)(1) (emphasis added). That is, Crawford wants this Court to treat Erie as an Ohio citizen. However, the carve-out, which would allow the Court to do that, is contingent upon the case being a "direct action against the insurer" in which the "insured is not . . . a party-defendant . . . ." *Id.* In this case, Erie is the plaintiff; thus, this is not an action "against the insurer . . . ." *Id.* Moreover, the insured, Crawford, is a party-defendant. In other words, the exception upon which Crawford hopes to rely, is not applicable here. As the Sixth Circuit put it:

> Section 1332(c)(1) refers to situations where the plaintiff is suing the tortfeasor's insurer, rather than suing the tortfeasor directly, on the issue of liability. This makes logical sense, as § 1332(c)(1) evidently was enacted to prevent a plaintiff from end-running the diversity of citizenship requirement (where the tortfeasor hails from plaintiff's state, but the tortfeasor's insurer does not) by suing the tortfeasor's insurer instead of the tortfeasor.

*Estate of Monahan v. Am. States Ins. Co.*, 75 F. App'x 340, 343 (6th Cir. 2003); *see also, e.g.*, *Northbrook Nat'l Ins. Co. v. Brewer*, 493 U.S. 6, 9-10 (1989) (explaining that § 1332(c)(1) was enacted in response to a "sharp increase" in federal court litigation resulting from state legislation that enabled direct suit of insurers, thereby creating artificial diversity where a tort victim, rather than sue a non-diverse tortfeasor in state court, instead pursues a diverse insurer in federal court); *Peterson v. TIG Specialty Ins. Co.*, 211 F. Supp. 2d 1013, 1015 (S.D. Ohio 2002) (quoting *Vargas v. California State Auto. Ass'n Inter-Ins. Bureau*, 788 F. Supp. 462, 463 (D. Nev. 1992)). ("[T]his direct action exception that destroys diversity exists only where a third-party tort victim forgoes suing the tortfeasor in favor of instead suing the tortfeasor's liability insurer directly. This is the universal rule.").

This Court has subject matter jurisdiction in this case.

## B. Abstention

Defendant next argues that even if this Court has subject matter jurisdiction, it should abstain from exercising it. (Doc. 24, D. 2d Mot. to Dis.).  The Court agrees.

Exercise of jurisdiction upon the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is not mandatory. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494-95 (1942).  In fact, the Sixth Circuit has "repeatedly held in insurance coverage diversity cases that 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.'" *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986)).  "Further, such actions . . . should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem." *Id.* (internal quotation marks omitted).[2]  Against that backdrop, five factors are used to determine if, notwithstanding the preference against exercising jurisdiction in cases like this, the case is appropriate for the exercise of jurisdiction to grant a declaratory judgment:

> (1) whether the judgment would settle the controversy;
>
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
>
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy that is better or more effective.

---

[2] Plaintiff initially quotes *Colorado River Water Conservation District v. United States*, for the proposition that United States Courts have a "virtually 'unflagging obligation . . . to exercise the jurisdiction given them.'" (Doc. 26, P. Re. in Opp. to D. 2d Mot. to Dis. at 3 (quoting 424 U.S. 800, 817 (1976))).  However, as Plaintiff later acknowledges, *Colorado River*, does not apply in cases like this. (Doc. 26, P. Re. in Opp. to D. 2d Mot. to Dis. at 4).  In declaratory judgment cases, the exercise of jurisdiction is a matter of discretion and is reviewed on an abuse of discretion standard. *See, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-290 (1995); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).

*Bituminous*, 373 F.3d at 813 (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).   Before moving to consider these factors, however, the Court must correct a misconception under which Erie is apparently operating.

Erie takes it as established that Crawford committed the acts in question and that those acts were crimes. (*See, e.g.*, Doc. 22, P. Memo. in Supp. of SMJ at 1-3).   Erie believes this is so because Crawford pled guilty to a number of charges. (Doc. 30, P. Reply in Supp. of SMJ *in passim*).   However, Ohio law[3] affords no such preclusive effect to guilty pleas:

> Neither a plea of guilty in a criminal prosecution, nor the judgment founded upon it, are conclusive against the defendant in a civil action.
>
> Such plea stands like any other confession of a party, and may be controverted.

*Clark v. Irvin*, 9 Ohio 131, syllabus (1839); *Allstate Ins. Co. v. Cartwright*, Case Nos. 15472/15473, 1997 Ohio App. LEXIS 2920, *17-18 (June 27, 1997) (showing the continuing vitality of *Clark*).   To be sure, evidence of Defendant's convictions would not be excluded as hearsay, but could be admitted, "to prove any fact essential to sustain the [criminal] judgment . . . ." Ohio Evid. R. 803(22).   However, the <u>admissibility</u> of such evidence does not speak to the <u>sufficiency</u> of it and Ohio law considers criminal convictions equivalent to any other confession evidence – evidence which may be explained or rebutted – not *res judicata. See Phillips v. Rayburn*, 680 N.E.2d 1279, 1283 (Ohio Ct. App. 1996) (quoting *Hickman v. Kraft*, Case No.: 84 CA 2, 1985 Ohio App. LEXIS 8953, *11 (Sept. 26, 1985)) (citing 1 Weissenberger, Ohio Evidence §§ 803.254-56, 803.258 (1985)) ("Evidence offered pursuant to [Ohio] Evid. R. 803(2[2]) is not conclusive of the fact sought to be proved, and the opponent may explain the

---

[3] Because this Court is sitting in diversity, Ohio law controls the substantive questions of law in this case. *See, e.g., Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001).  Moreover, "[f]ederal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. §1738).  "Accordingly, federal courts must look to the law of the rendering state to determine whether and to what extent the prior judgment should receive preclusive effect in a federal action." *Scherer v. JP Morgan Chase & Co.*, 508 F. App'x 429, 435 (6th Cir. 2012) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

prior conviction and may offer any evidence rebutting the fact sought to be proved by the proponent."). One of the reasons for this, is that "in many cases a plea of guilty may, in fact, amount to a compromise by the defendant to avoid an expensive or undesirable trial, or both." *Kendzia v. Carney*, 252 N.E.2d 639, 641 (Ohio 1969) (Schneider, J., dissenting). "Concededly, the proposition that a criminal conviction arising from a plea of guilty is conclusive for all purposes and for all times, *i.e.*, *res judicata* of the facts necessarily encompassed therein, has a reasonable appeal." *Id.* However, Ohio courts have "never held, nor has it ever been claimed, that the conviction is *res judicata* as to the act in controversy in the civil proceeding." *Id.* (citing *Clinger v. Duncan*, 141 N.E.2d 156 (Ohio 1957); *Freas v. Sullivan*, 200 N.E. 639 (Ohio 1936); *Clark*, 9 Ohio 131).[4]

---

[4] Erie cites three cases for the proposition that issue preclusion does apply in civil cases based on criminal convictions in Ohio. (Doc. 30, Reply in Supp. of SMJ at 2-4). None, however, stands for this broad proposition. *State v. Szefcyk* decided that a criminal defendant could not, in a post-conviction proceeding, raise a defense or claimed lack of due process that could have been raised at trial on direct appeal, subsequent changes to the law notwithstanding. 671 N.E.2d 233, 235 (Ohio 1996). *White v. Suster*, held that a defendant, who had previously litigated a motion to withdraw a guilty plea could not seek a writ of mandamus to order the court that had rejected his motion to withdraw his guilty plea, to grant the motion instead. 101 Ohio St. 3d 212, 2004-Ohio-719, 803 N.E.2d 813, at ¶¶ 5-8. Finally, *Neshewat v. Salem*, decided, under Michigan law, that a plaintiff had failed to sufficiently allege one of his causes of action. 173 F.3d 357, 365 (6th Cir. 1999). True, *Neshewat*, implied, in passing, that a plea or conviction will bar subsequent civil actions for damages that gave rise to the criminal charges. *Id.* at 361-62. However, whether a conviction can be used for offensive issue preclusion in every civil case is quite a different question from whether a guilty plea is sufficient evidence that there was probable cause for an arrest or prosecution (and hence, whether that plea precludes an action for damages for malicious prosecution or false arrest by the erstwhile defendant). Erie also cites a case from the Ohio Court of Common Pleas as a factual analog. *Blackwell v. Gorman*, 142 Ohio Misc. 2d 50, 2007-Ohio-3504, 870 N.E.2d 1238 (C.P.). However *Blackwell* does not address the use of issue preclusion attempted here – offensive issue preclusion premised merely on the fact of a guilty plea or conviction. *Id.* at ¶ 35. Nor does *Blackwell* properly announce general rules of issue preclusion; rather, *Blackwell* reasons that the rule of *Heck v. Humphrey*, requiring favorable termination or vacatur of a criminal conviction before bringing a § 1983 action, does not prevent a person from bringing purely state-law claims. *Svete v. Wunderlich*, Case No. 2:07-CV-156, 2008 U.S. Dist. LEXIS 75977, *7-8 (S.D. Ohio Sept. 30 2008) (Sargus, J.); *see also Heck v. Humphrey*, 512 U.S. 477, 488 n.9 (1994); *Blackwell*, 2007-Ohio-3504, at ¶¶ 32-34. To the extent a party might argue that *Blackwell* stands for a more general rule on the laws of issue preclusion, the argument would stand on shaky foundations. *Compare Blackwell*, 2007-Ohio-3504, at ¶¶ 34-36 (arguably purporting to use state *res judicata* law to give preclusive effect to a federal decision on federal criminal law and arguably recognizing a rule of relaxed mutuality) *with Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001) (explaining that the preclusive effect of federal court judgments on federal questions is a matter of federal – not state – law) *and Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, syllabus at 1 (Ohio 1983) (reaffirming the general requirement of mutuality in Ohio).

Simply put, Erie takes it for granted that what Crawford did in this case is established beyond all argument or explanation. It is not. Before deciding the question of whether Crawford's conduct is covered by Erie's policy, this Court would have to decide what Crawford did. It may be established by Crawford's guilty plea that the bodily injuries sustained by the plaintiff-victims as a result of Crawford's conduct were "expected or intended by" Crawford. (Doc. 22, Ex. E, Home Protector Policy at 15; Doc. 22, Ex. F, Personal Catastrophe Policy at 4). That is, "Ohio courts . . . have held that a criminal conviction, in and of itself, can establish intent for the purposes of applying an intentional-acts exclusion when the insurance company moves for summary judgment on that issue." *Westfield Ins. v. Barnett*, 2003-Ohio-6278, at ¶ 16 (Ct. App.) (citing *Baker v. White*, 2003-Ohio-1614 (Ct. App.); *Adkins v. Ferguson*, 2003-Ohio-403 (Ct. App.); *Allstate Ins. Co. v. Cole*, 717 N.E.2d 816 (Ohio Ct. App. 1998); *Nearor v. Davis*, 694 N.E.2d 120 (Ohio Ct. App. 1997); *Lingo v. State Farm Fire & Cas. Co.*, Case Nos.: 69514, 70753, 1996 Ohio App. LEXIS 5444 (Dec. 5, 1996)). However, even assuming that the injuries to the victims were intended, the Court would still have to decide what Crawford did and whether, under the circumstances, Crawford's acts were "reasonable acts committed to protect persons [and/or] property." (Doc. 22, Ex. E, Home Protector Policy at 15; Doc. 22, Ex. F, Personal Catastrophe Policy at 4).

In short, en route to deciding whether Crawford's actions were covered, this Court would, at a minimum, have to decide what Crawford did and whether what she did constituted reasonable acts committed in defense of persons or property. Far from simply construing the insurance contract in light of undisputedly criminal conduct, this Court would essentially have to hold a miniature trial on the merits prior to settling the coverage issue. With this understanding, the Court turns to the abstention factors.

10

## 1.  A Declaratory Judgment Would Not Settle this Controversy

The victim-plaintiffs are not parties to this litigation.  Thus, any decision authored by this Court cannot, according to normal principles of *res judicata*, be used preclusively against them. *See, e.g.*, *GE Med. Sys. Eur. v. Prometheus Health*, 394 F. App'x 280, 283 (6th Cir. 2010) (citing *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union*, 97 F.3d 155, 161 (6th Cir. 1996)) (holding that in order for issue preclusion to apply, among other elements, "the party against whom issue preclusion is sought [must have] had a full and fair opportunity to litigate the issue in the prior proceeding"); *Ohio ex rel. Davis v. Public Emps. Ret. Bd.*, 174 Ohio App. 3d 135, 2007-Ohio-6594, 881 N.E.2d 294, at ¶ 18 (quoting *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994)) (remarking that one prerequisite for a party being precluded by a prior ruling is that the party "was a party in privity with a party to the prior action").  Thus, at first blush, a decision that Erie is not responsible to indemnify Crawford, might seem an entirely futile thing.  That is, it might seem that the victim-plaintiffs, not being parties to this litigation, might be able to proceed directly against Erie in state court, even if Erie obtained a declaration here, and, thereby, relitigate the coverage issue.  However, Ohio Revised Code, section 3929.06, answers this concern.  It provides for a direct action by a tort victim against the insurer of the tortfeasor under certain conditions after having received a judgment against the tortfeasor. Ohio Rev. Code § 3929.06(A-B) (1999).  Then it specifically explains that an insurer who has obtained a declaratory judgment as to the extent of coverage may assert that judgment preclusively against the tort-victim claimant "notwithstanding any contrary common law principles of *res judicata* or adjunct principles of collateral estoppel." Ohio Rev. Code § 3929.06(C)(2).  Thus, a declaratory judgment by this Court, even rendered without the participation of the victim-plaintiffs, could be used against them by Erie should they try to collect from Erie on any judgment they might win in state court.

11

However, deciding the coverage issue is the full measure of the narrow utility of a declaratory judgment issued by this Court. That is, even if this Court were to decide the predicate factual questions about what happened and then the legal questions about whether what happened constitutes defense of persons or property, in the proceeding before the Ohio Court of Common Pleas for Meigs County, those decisions would not be binding. *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229-30 (1922) (remarking that state and federal courts "do not belong to the same system, so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent, and have no common superior."). Similarly, any factual or legal ruling by this Court (with the exception of the coverage issue) could be relitigated by the victim-plaintiffs in the Meigs County Court of Common Pleas because the victims are not parties to this action. *See GE Med. Sys. Eur.*, 394 F. App'x at 283; *Davis*, 2007-Ohio-6594, at ¶ 18. Thus a declaratory judgment would settle the narrow question of coverage but it would not advance the underlying factual or legal issues[5] and it would not, as will be discussed, settle the broader controversy presented to the Court.

The controversy, in this case, "is larger than just the rights and obligations under the policy." *Liberty Mut. Fire Ins. Co. v. Bohms*, 490 F. App'x 721, 725 (6th Cir. 2012) (affirming a decision not to exercise jurisdiction where counterclaims enlarged the controversy before the district court). Crawford has counterclaimed against Erie for breach of contract and breach of the duty of good faith. (Doc. 15, Answer & Counterclaim). Thus, "the judgment would [NOT] settle the controversy;" rather, it would settle only one side of the controversy. *Bituminous*, 373 F.3d at 813. That is, the "first *Bituminous* factor does not ask whether the Court could, if

---

[5] There is a split of authority within the Sixth Circuit on this point. In some cases, the Sixth Circuit has held this factor satisfied if the judgment only answers the question regarding insurance coverage while, in other cases, the Sixth Circuit has held that the declaratory judgment will not satisfy this factor unless it settles the underlying controversy as well. *Flowers*, 513 F.3d at 555-56 (discussing and attempting to reconcile split).

properly vested with jurisdiction, issue a judgment which would settle the controversy. The Court undoubtedly could. The question posed by *Bituminous* is whether the declaratory judgment would settle the controversy." *Liberty Mut. Fire Ins. Co. v. Bohms*, Case No.: 1:10-cv-1158, 2011 U.S. Dist. LEXIS 83641, *12 (W.D. Mich. 2011) (holding that the declaratory judgment would not resolve the counterclaims brought in the case for, among other things, breach of contract and bad faith). Foreseeing counterarguments to the lesson of *Bohms*, the Sixth Circuit, in affirming, remarked:

> The district court did . . . acknowledge that if [the plaintiff-insurer] was not obligated to [the defendant-insured] under the policy, that these additional determinations would, in all likelihood, be fairly straightforward, as "[the insurer]'s denial would almost certainly not have been in bad faith, its representations almost certainly not fraudulent, and its fiduciary duties almost certainly not . . . breached." *Bohms*, 2011 U.S. Dist. LEXIS 83641, at *13. Nevertheless, the court would still be required to make such determinations . . . and the declaratory judgment would not, then, have settled the controversy. *Id.*

*Bohms*, 490 F. App'x at 725 n.2 (parallel citations omitted). In short, a decision by this Court could decide the coverage question but would not, on its own strength, dispose of all claims in this case and would do nothing otherwise to advance the merits of the Meigs County Court of Common Pleas case.

This factor weighs against the exercise of jurisdiction.

### 2. A Declaratory Judgment Would, at Great Cost, Clarify the Relations of Some of the Parties

As discussed above, a decision by this Court would settle the coverage issue. However, this Court would have to essentially pass upon the merits of the case in order to reach the coverage issue and yet, all the myriad decisions of fact and law made en route to the coverage decision, would need to be relitigated in state court. Thus, although a decision by this Court would not be entirely futile – in that it would refine the relation between Erie and Crawford – it

13

would be of so little utility in relation to the judicial resources consumed in reaching it that it is difficult, other than as a purely theoretical exercise, to say that it would be useful at all.

This factor weighs in favor of jurisdiction but its weight is slight.

### 3. The Declaratory Remedy may not Purposefully be Sought in this Case for "procedural fencing" or "to provide an arena for a race for res judicata" but the Court is Nonetheless Concerned about the Practical Effects of a Ruling

Although the Court senses no improper motive by Erie, the Court is troubled by the effect of deciding the coverage issue without the participation of the victim-plaintiffs. As discussed above, a decision on the coverage issue will necessarily entail decisions on the merits of the substantial factual and legal questions in the underlying case. That is, it is impossible to figure out whether Crawford's conduct is covered by Erie's policies without deciding what Crawford did and whether her actions, under Ohio law, constituted "reasonable acts committed to protect persons [and/or] property." (Doc. 22, Ex. E, Home Protector Policy at 15; Doc. 22, Ex. F, Personal Catastrophe Policy at 4). Erie brought this declaratory judgment action apparently thinking that Crawford's guilty plea settled these questions, but the Court's review of Ohio law on criminal-to-civil preclusion shows it does not. Thus, though Erie's request for a determination of coverage seemed modest when tendered, it is now clear that resolution of the issue would essentially require a trial of the merits. This is all the more true since Erie and Crawford have submitted materially different renditions of what occurred on the night in question.

As the record stands, Erie describes the event as a random shooting; Crawford, wife of a retired police officer, without apparent justification or provocation, fired multiple times upon a passing car, wounding two of the occupants. (*See* Doc. 22, P. Memo. in Supp. of SMJ at 1-3). In support of its version, Erie has submitted Crawford's guilty plea and police reports. (Doc. 22, Exs. B, D). In response, Crawford has submitted her own affidavit which does much to attempt

14

to explain how her actions might constitute self-defense, or, to use the language of Erie's policies, "reasonable acts committed to protect persons [and/or] property." (Doc. 27, Ex. 1, Crawford Aff.; Doc. 22, Ex. E, Home Protector Policy at 15; Doc. 22, Ex. F, Personal Catastrophe Policy at 4). Resolution of this factual disparity would require admissible evidence together with a hearing or trial with testimony of witnesses, stipulations, sworn declarations, or other authenticated sources. Such a trial or fact-finding venture (other than settling the coverage issue) would have no legal effect – its factual and legal conclusions would neither bind the state court nor preclude the victim-plaintiffs. But it would be unrealistic to pretend as though such a proceeding and the conclusions therefrom would be entirely ignored by the state court. It therefore seems unjust (to say nothing of wasteful) to hold what amounts to an advisory trial without the involvement of the victim-plaintiffs.

In addition, Ohio Revised Code, section 3929.06(C)(2) abrogates the typical (and very just) rule that preclusion shall not be imposed against persons who were not parties (or in privity with parties) in the prior action. *See, e.g.*, *GE Med. Sys. Eur.*, 394 F. App'x at 283; *Davis*, 2007-Ohio-6594, at ¶ 18. While the Court recognizes the intent of the Ohio Legislature to abrogate the rule in this instance, that does not mean that a proceeding regarding coverage would not be improved in the quality of its justice by the participation of plaintiff-victims. One can easily imagine a situation where a tort victim might have a stronger wish that the defendant be indemnified than the defendant herself. For instance, in a situation where a defendant is judgment proof by reason of poverty, the defendant would stand to lose almost nothing, whether indemnified or not. Nonetheless, the question of indemnity would greatly affect the tort victim's likelihood of recovery. One could also imagine the reverse – a situation where the victim of an

intentional tort might wish to exact a personal price upon the defendant who harmed him and might, therefore, have an interest in arguing against indemnification.

While the Court discerns no underhanded motive by Erie in bringing this suit, it is apparent that the plaintiff-victims will be affected by any ruling this Court makes on the coverage issue.  The more equitable outcome is for the trial court in Meigs County, where plaintiff-victims are parties, to decide this issue.  Because there is no discernible intent to create "procedural fencing" or "to provide an arena for a race for res judicata" but there is, nonetheless, a danger of unfairness, the Court accords this factor only modest weight in favor of the exercise of jurisdiction.

### 4. Use of a Declaratory Action Would, in this Case, Increase the Friction Between Ohio's Federal and State Courts and Improperly Encroach on State Jurisdiction

With respect to this factor, the Sixth Circuit considers three additional sub-factors:

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814-15 (quoting *Roumph*, 211 F.3d at 968).

As discussed above, Ohio law does not, with a notable exception for intent, generally accord issue preclusive effects in civil cases to guilty pleas.  Such evidence is instead treated as a confession – to be explained or rebutted like any other. *See Clark*, 9 Ohio 131, syllabus; *Cartwright*, 1997 Ohio App. LEXIS 2920, *17-18; *Phillips*, 680 N.E.2d at 1283; *Hickman*, 1985 Ohio App. LEXIS 8953, *11; *cf. Westfield*, 2003-Ohio-6278, at ¶ 16 ("Ohio courts . . . have held that a criminal conviction, in and of itself, can establish intent for the purposes of applying an

intentional-acts exclusion when the insurance company moves for summary judgment on that issue."). In this case, though Crawford pled guilty, Crawford has filed a 68-paragraph affidavit explaining her conduct on the night in question. (Doc. 27, Ex. 1, Crawford Aff.). Specifically, she claims that both leading up to and on, the night in question, she and her husband were the subject of harassment and threats of physical violence by neighbors. *Id.* at ¶¶ 8-53. She notes that she was within the curtilage of her home when she felt in immediate fear of her life and that it was from this position that she fired the shots. *Id.* at ¶¶ 42-56. She also explains that the car in question was off the road and on her property when she fired. *Id.* at ¶¶ 49-51. She asserts that firing multiple shots and hitting the car was something of an accident, as she meant to fire, instead, a warning shot. *Id.* at ¶¶ 53-63. Finally, she explains she pled guilty, rather than go to trial, because her husband has lung cancer and she wanted to be home as soon as possible. *Id.* at ¶¶ 67-68. In other words, her affidavit suggests, though she pled guilty, that her actions may nonetheless have been "reasonable" in the course of "protect[ing] persons [and/or] property." (Doc. 22, Ex. E, Home Protector Policy at 15; Doc. 22, Ex. F, Personal Catastrophe Policy at 4). In opposition to Crawford's evidence, Erie has submitted a copy of Crawford's sentencing entry, finding her guilty of several counts of felonious assault and variations of improper discharge of a firearm. (Doc. 22, Ex. D, Sent. Ent. at 1). Erie also submits police reports that may shed doubt on some aspects of Crawford's story. (Doc. 22, Ex. B, Police Rpts.). Thus, what happened in the early morning of Friday the 13th, 2010, is a matter of factual dispute between the parties and resolving it is "important to an informed resolution of th[is] case . . . ." *Bituminous*, 373 F.3d at 814 (quoting *Roumph*, 211 F.3d at 968).

Moreover, the factual inquiry – what happened – is exactly the same factual inquiry facing the Ohio Court of Common Pleas for Meigs County in the tort action brought by

17

Crawford's alleged victims. While there is nothing legally problematic in two different sovereigns passing on the same questions of fact, the Meigs County Court of Common Pleas "is in a better position to evaluate those factual issues than is the federal court." *Id.*, *see also Kline*, 260 U.S. at 230, 232 (identical *in-personam* litigation can proceed simultaneously in courts of two different sovereigns). The Meigs County Court of Common Pleas is located in the vicinity of the shooting, while this Court is 100 miles away. The Meigs County Court, by contrast, already has all the parties before it and is conveniently accessible to all the local witnesses (including the plaintiff-victims). Furthermore, though the first two of three *Bituminous* sub-factors concern factual issues, it bears mentioning that the legal issues likely to arise in this case are entirely issues of Ohio law. The Meigs County Court of Common Pleas is clearly in a better position to obtain the necessary evidence and decide the factual and legal questions.

Crawford intends to argue that her actions were not (at least not entirely) intentional and, even if they were intentional, were reasonable acts committed to protect persons or property. (Doc. 27, D. Re. in Opp. to SMJ at 4-5). Thus, in addition to going through the same factual finding as the Meigs County Court of Common Pleas, this Court would also have to undertake an analysis of Ohio's laws on self-defense and defense of property. This legal inquiry would solely implicate Ohio law, would entirely duplicate the inquiry which must be undertaken by the Court in Meigs County in deciding the merits, and hence, there is "a close nexus between the underlying factual and legal issues and state law . . . ." *Bituminous*, 373 F.3d at 814-15 (quoting *Roumph*, 211 F.3d at 968). Moreover, even if this Court were to entertain the questions of what happened on August 13, 2010, and whether those happenings constitute reasonable defensive acts, any decision the Court makes will not be binding upon the Meigs Count Court of Common Pleas. *Kline*, 260 U.S. at 230 (remarking that state and federal courts "are independent,

18

and have no common superior."). Consequently, in addition to being a waste of judicial resources, it is possible that this Court and the Meigs County Court might issue opposite opinions on the same issues. While it is not legally forbidden for this Court and a state court to have differing views of the same case, it does create friction between the state and federal courts. Though differing views are always a risk when a federal court sits in diversity and applies state law, the risk is more stark when state and federal courts are to pass on the exact same questions in the exact same factual circumstances in the exact same case. Accepting this risk is all the more difficult to countenance when the Meigs County Court of Common Pleas could decide the entire case and risk none of the problems discussed here.

      This factor weighs heavily against jurisdiction.

### 5. A Better Alternative to this Court's Exercise of Jurisdiction Would be for the Ohio Common Pleas Court for Meigs County to Decide the Coverage Issue

      Erie may obtain a declaration (as it does here) in the same proceeding where the underlying tort action is being litigated. *See, e.g.*, Ohio Rev. Code §§ 2721.01 *et seq.* Moreover, doing so in this case makes perfect sense. Indeed, the Sixth Circuit has said that "'such actions . . . should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created.'" *Bituminous*, 373 F.3d at 812 (quoting *Manley, Bennett, McDonald & Co.*, 791 F.2d at 463) (citing *Roumph*, 211 F.3d 964; *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278-79 (6th Cir. 1990); *Grand Trunk W. R.R. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)); *see also, e.g.*, *Flowers*, 513 F.3d at 562 (quoting *Grand Trunk*, 746 F.2d at 326) ("A district court should 'deny declaratory relief if an alternative remedy is better or more effective.'").

This factor too, weighs heavily against the exercise of jurisdiction. Three of five factors being against jurisdiction (two heavily so) and the two opposed to jurisdiction being of little weight under the peculiar facts and circumstances here, this Court shall not exercise jurisdiction.

### C. Voluntary Dismissal of Crawford's Counterclaim

Crawford's second motion to dismiss post-dates the filing of her counterclaim. (*Compare* Doc. 17, Answer & Counterclaim (filed 5/28/2013) *with* Doc. 24, D. 2d Mot. to Dis. (filed 08/16/2013)). Therefore, when the second motion was filed, claims by both parties were pending. Despite this fact, Crawford still "move[d] this [C]ourt to dismiss the current action or transfer it to the Common Pleas Court of Meigs County." (Doc. 24, D. 2d Mot. to Dis at 1 (emphasis added)). Nor was this a slip of the pen. *See Id.* at 6 (emphasis added) (stating "this action should be dismissed" and "Crawford . . . requests that this case be dismissed or transferred to the Common Pleas Court of Meigs County."). In other words, Crawford asked not only for dismissal or transfer of Erie's complaint, but also the entire case/action, including her own counterclaim. In addition, as Crawford has asked for the case to be transferred as an alternative to dismissal, it is clear that Crawford anticipated refiling and litigating these same matters in Ohio courts. Accordingly, a dismissal without prejudice to refiling in Ohio courts does not prejudice Crawford because it is exactly what she wanted.[6] The Court shall construe Document 24 as a motion to dismiss pursuant to Federal Rule of Civil Procedure 41(a) and grant it. Crawford's counterclaim is dismissed without prejudice.

---

[6] Although Crawford asks, as an alternative to dismissal, for this case to be transferred from this Court to the Meigs County Court of Common Pleas, and although that would be a cleaner and more efficient procedure than dismissal followed by refiling, this Court is without power to effect such a transfer. This Court has the power to remand cases to state court which were, in the first instance, filed in state court and then removed to this Court. 28 U.S.C. § 1447 (2012). This Court may transfer cases to other federal courts to change venue or to cure jurisdictional problems. *See* 28 U.S.C. §§ 610, 1404, 1631 (2012). However, this Court may not remand a case which has not been removed (i.e., was originally filed in this Court) nor is there any authority or law that would allow this Court, under these circumstances, to transfer the case to a state court.

**D. Erie's Motion for Summary Judgment is Moot**

In view of the Court's decisions to abstain from the exercise of jurisdiction over Erie's declaratory judgment action and dismissing Crawford's counterclaim, Erie's motion for summary judgment is moot. The same is therefore denied.

### IV. CONCLUSION

Defendant's first motion to dismiss (Doc. 6) is **DENIED**, Defendant's second motion to dismiss (Doc. 24) is **GRANTED**, and Plaintiff's motion for summary judgment (Doc. 21) is **DENIED as moot**. All claims and counterclaims by all parties are hereby **DISMISSED without prejudice to refiling in the Ohio Court of Common Pleas for Meigs County**.

The Clerk is directed to **REMOVE** documents 6, 21, and 24, from the Court's pending motions list.

The Clerk is directed to **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**

_____2-25-2014_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

21